FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jan 10, 2022

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| SOPHIE S.,<br><br>                              Plaintiff,<br><br>    v.<br><br>KILOLO KIJAKAZI, ACTING<br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>                              Defendant. | NO:  1:21-CV-03017-LRS<br><br>ORDER GRANTING PLAINTIFF'S<br>MOTION FOR SUMMARY<br>JUDGMENT |

BEFORE THE COURT are the parties' cross motions for summary judgment.  ECF Nos. 14, 20.  This matter was submitted for consideration without oral argument.  Plaintiff is represented by Attorney D. James Tree.  Defendant is represented by Special Assistant United States Attorney Nancy C. Zaragoza.  The Court has reviewed the administrative record, the parties' completed briefing, and is fully informed.  For the reasons discussed below, the Court **GRANTS** Plaintiff's Motion for Summary Judgment, ECF No. 14, **DENIES** Defendant's Motion for Summary Judgment, ECF No. 20, and **REMANDS** the case to the Commissioner

ORDER ~ 1

for additional proceedings consistent with this Order.

## JURISDICTION

Plaintiff Sophie S.[1] protectively filed an application for Social Security Disability Insurance (DIB) on June 4, 2018, Tr. 122, alleging an onset date of September 1, 2013, Tr. 184, and an application for Supplemental Security Income (SSI) on October 11, 2018, Tr. 114, alleging an onset date of August 20, 2013, Tr. 188, due to neuropathy, fibromyalgia, a heart condition, a broken ankle, an unsuccessful rotator cuff surgery, carpel tunnel on the right, carpel tunnel on the left with arterial disease, and high blood pressure, Tr. 239. Plaintiff's applications were denied initially, Tr. 131-33, and upon reconsideration, Tr. 135-40. A hearing before Administrative Law Richard Geib ("ALJ") was conducted on March 3, 2020. Tr. 40-96. Plaintiff was represented by counsel and testified at the hearing. *Id*. The ALJ also took the testimony of vocational expert Mark McGowan. *Id*. The ALJ entered a partially favorable decision on June 9, 2020. Tr. 19-34. The Appeals Council denied review on December 11, 2020. Tr. 1-5. Therefore, the ALJ's June 9, 2020 decision became the final decision of the Commissioner. The matter is now before this Court pursuant to 42 U.S.C. §§ 405(g). ECF No. 1.

---

[1] In the interest of protecting Plaintiff's privacy, the Court will use Plaintiff's first name and last initial, and, subsequently, Plaintiff's first name only, throughout this decision.

ORDER ~ 2

## BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner. Only the most pertinent facts are summarized here.

Plaintiff was 49 years old at the alleged onset date. Tr. 184. She completed one year of college in 1984. Tr. 240. Her reported work history includes jobs as the manager in the grain storage industry, office help for a temp agency, an office manager for an insurance business, and a team leader in food manufacturing. Tr. 213, 241. At application, she stated that she stopped working on December 1, 2010, because of her conditions. Tr. 239, 248. The date Plaintiff was last insured for DIB purposes was December 31, 2013. Tr. 196.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a

reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Further, a district court will not reverse an ALJ's decision on account of an error that is harmless. *Id*. An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §

423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment is as severe or more

severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v),

416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).  If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The claimant bears the burden of proof at steps one through four.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

First, the ALJ found that Plaintiff's date last insured for DIB purposes was December 31, 2013.  Tr. 21.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date.  Tr. 21.

At step two, the ALJ found that Plaintiff had the following severe impairments from the alleged onset date, September 1, 2013, through the date last insured, December 31, 2013: coronary artery disease; peripheral vascular disease (lower extremity) bilateral treated with stents; congestive heart failure; a lumbar spine condition; hypertension; and obesity.  Tr. 21.  The ALJ found that Plaintiff

had the following severe impairments since the SSI protective filing date, October 11, 2018, through the date of the ALJ decision: coronary artery disease; peripheral vascular disease (lower extremity) bilateral treated with stents; congestive heart failure; a lumbar spine condition; hypertension; obesity; carpal tunnel syndrome; peripheral neuropathy; and a right rotator cuff condition.  Tr. 22.

At step three, the ALJ found that since September 1, 2013, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment.  Tr. 22.

The ALJ then found that since September 1, 2013, through the date last insured, December 31, 2013, Plaintiff had the RFC to perform light work as defined in 20 CFR § 404.1567(b) with the following limitations:

> She could lift and carry 20 pounds occasionally and 10 pounds frequently.  She could stand and walk 4/8 hours and sit 6/8 hours.  She could occasionally climb ramps and stairs.  She could never climb ladders, ropes, or scaffolds.  She could occasionally balance, stoop, kneel, crouch, and crawl.  She needed to avoid concentrated exposure to extreme heat, extreme cold, and vibration.

Tr. 24.  The ALJ then found that since October 11, 2018, Plaintiff had the RFC to perform sedentary work as defined in 20 CFR § 416.967(b)[2] with the following limitations:

> she can occasionally climb ramps and stairs.  She can never climb ladders, ropes, or scaffolds.  She can occasionally balance, stoop, kneel, crouch, and crawl.  She must avoid concentrated exposure to

_____

[2]The definition of sedentary work can be found at 20 C.F.R. § 416.967(a).

extreme heat, extreme cold, and vibration.  She can frequently handle and finger bilaterally.  She would be off task 20 percent of the workday or absent two or more days per month.

Tr. 30.

At step four, the ALJ identified Plaintiff's past relevant work as production helper, ready mix food prep supervisor, and office manager.  Tr. 32.  Next, the ALJ found that prior to October 11, 2018, Plaintiff was capable of performing her past relevant work as an office manager.  Tr. 32.  The ALJ found that beginning on October 11, 2018, Plaintiff's RFC prevented her from being able to perform her past relevant work.  Tr. 32.

At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there were no other jobs that exist in significant numbers in the national economy that Plaintiff could perform beginning on October 11, 2018.  Tr. 33.

The ALJ found that Plaintiff was not disabled prior to October 11, 2018, but became disabled on October 11, 2018, and continued to be disabled through the date of the decision.  Tr. 34.  The ALJ found that Plaintiff was not under a disability within in the meaning of the Social Security Act any time through the date last insured for DIB purposes, December 31, 2013.  Tr. 34.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her DIB under Title II.  ECF No. 14.  Plaintiff raises the following issues for this

ORDER ~ 9

Court's review:

1. Whether the ALJ made a proper step three determination;

2. Whether the ALJ properly developed the record;

3. Whether the ALJ made a proper step two determination;

4. Whether the ALJ properly addressed the medical opinions; and

5. Whether the ALJ properly addressed Plaintiff's symptom statements.

## DISCUSSION

## 1.    Step Three

Plaintiff argues that the ALJ erred by failing to find that Plaintiff met listings 4.04C and 4.12A.

If a claimant has an impairment or combination of impairments that meets or equals a condition outlined in the "Listing of Impairments," then the claimant is presumed disabled at step three, and the ALJ need not to consider her age, education, and work experience.  20 C.F.R. § 404.1520(d).  An ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment.  *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001).  A boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not meet a listing.  *Id*.

### A.    Listing 4.04

Plaintiff argues that the ALJ erred by failing to consider that Plaintiff's impairment met listing 4.04C.  ECF No. 14 at 10.  To meet listing 4.04C, a

ORDER ~ 10

claimant must show that she has an ischemic heart disease with related symptoms, with or without prescribed treatment, and with: (1) 50% or more narrowing of a non-bypassed left main coronary artery, 70% or more narrowing of another coronary artery, or 50% or more narrowing of at least 2 non-bypassed coronary arteries; and (2) resulting in very serious limitations in the ability to independently initiate, sustain, or complete activities of daily living. 20 C.F.R. pt. 404, subpt. P, App. 1.

In 2011, Plaintiff's catheterization showed "an LAD with an eccentric calcified 50% stenosis proximally and then a 50-70% with retrograde filling in the principle OM. The right had a tandem calcified 50-70% narrowing." Tr. 351. The next catheterization in the record is in 2014, and shows no changes in coronary arteries since the 2011 catherization. Tr. 450-51. Furthermore, there is evidence that prior to the November 2013 stenting, Plaintiff could not go to the store and buy a gallon of milk. Tr. 565. However, this functional ability improved after the November 2013 stenting to the point Plaintiff was walking three miles a day. Tr. 567.

Here, the ALJ did not even discuss listing 4.04. Tr. 22-24. This was an error. There is evidence in the record that Plaintiff may have met the listing as early as 2011. Even if Plaintiff's improvement following the November 2013 stenting results in her no longer meeting the listing, the fact that Plaintiff was disabled prior to the currently calculated date last inured, December 31, 2013,

could result in a later date last insured for DIB purposes.  *See* 20 C.F.R. § 404.120.

The Court acknowledges that Plaintiff had filed previous DIB and SSI applications

that cover the 2011 through July of 2013 period that Plaintiff alleges that she met

listing 4.04 with the last denial of benefits dated August 1, 2013.  Tr. 97-111, 249-

50 (showing Plaintiff's last application for denied on August 1, 2013, at the initial

level with no evidence that she requested reconsideration).  Typically, res judicata

would prevent this Court or the ALJ from addressing disability prior to the August

2013 denial as Plaintiff's failure to request reconsideration rendered it a final

decision of the Commissioner.  20 C.F.R. § 404.905; s*ee Miller v. Heckler*, 770

F.2d 845, 848 (9th Cir. 1985) (res judicata applies to final determinations by the

Commissioner).  However, res judicata does not apply "where the claimant was

unrepresented by counsel at the time of the prior claim."  *Lester v. Chater*, 81 F.3d

821, 827-28 (9th Cir. 1995).  The Disability Determination Explanation for the

August of 2013 denial of benefits states that Plaintiff was unrepresented.  Tr. 100.

Therefore, this case is remanded for the ALJ to properly address listing 4.04

from as early as 2011.  In doing so, the ALJ will address Plaintiff's prior

applications and decide if they are eligible to be reopened.

### B.    Listing 4.12

Plaintiff argues that she meets listing 4.12A.  ECF No. 14 at 8-9.  Listing

4.12A requires a peripheral arterial disease, as determined by appropriate

medically acceptable imaging, causing intermittent claudication and a resting

ankle/brachial systolic blood pressure ratio of less than 0.50.  20 C.F.R. pt. 404,

subpt. P, App. 1.  The ALJ found that Plaintiff had intermittent claudication, but

not the ankle/brachial systolic blood pressure ratio of less than 0.50.  Tr. 23.

Plaintiff points to a September 2013 ultrasound showing a right ankle-brachial

index (ABI) ratio of 0.41.  ECF No. 14 at 9 *citing* Tr. 911.  Therefore, on remand

the ALJ will also readdress listing 4.12.

**2.    Duty to Develop the Record**

Plaintiff argues that the ALJ failed to properly develop the record by not

calling a medical expert at the hearing to provide testimony regarding her onset

date.  ECF No. 14 at 5-6.

"In Social Security cases the ALJ has a special duty to fully and fairly

develop the record and to assure that the claimant's interests are considered."

*Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996).  Despite this duty, it

remains the claimant's burden to prove that she is disabled.  42 U.S.C. §

423(d)(5)(A); 20 C.F.R. § 404.1512(a).  "An ALJ's duty to develop the record . . .

is triggered only when there is ambiguous evidence or when the record is

inadequate to allow for proper evaluation of the evidence."  *Mayes v. Massanari*,

276 F.3d 453, 459-60 (9th Cir. 2001).  Social Security Ruling (S.S.R.) 18-1p

makes clear that the ALJ may, but is not required to, call upon the services of a

medical expert, to assist in inferring an onset date.

Here, there is evidence that Plaintiff may have meet a listing as early as

2011.  While the ALJ was not required to call a medical expert at the prior hearing, he is instructed to call one at the remand hearing.  To properly address the cardiovascular listings, the ALJ is required to interpret cardiology tests.  To ensure that these tests are properly considered on remand, the ALJ will call a cardiologist to testify at a hearing.  This cardiologist will also address the issue of onset date of Plaintiff's severe impairments.

**3.    Step Two**

Plaintiff challenges the ALJ's step two determination by asserting that Plaintiff's peripheral neuropathy was a severe medically determinable impairment prior to December 31, 2013.  ECF No. 14 at 6-8.

To show a severe impairment, the claimant must first establish the existence of a medically determinable impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms, a diagnosis, or a medical opinion is not sufficient to establish the existence of an impairment.  20 C.F.R. § 404.1521.  "[O]nce a claimant has shown that [she] suffers from a medically determinable impairment, [she] next has the burden of proving that these impairments and their symptoms affect [her] ability to perform basic work activities."  *Edlund v. Massanari*, 253 F.3d 1152, 1159-60 (9th Cir. 2001).  At step two, the burden of proof is squarely on the Plaintiff to establish the existence of any medically determinable impairment(s) and that such impairments(s) are severe.  *Tackett*, 180 F.3d at 1098-99 (In steps one through

four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits.).

Here, the ALJ found that Plaintiff's peripheral neuropathy was a severe medically determinable impairment as of the SSI filing date, October 11, 2018, but not prior to the date last insured, December 31, 2013.  Tr. 21-22.  Plaintiff argues that the ALJ failed to address the evidence supporting a finding of a severe medically determinable impairment prior to December 31, 2013.  ECF No. 14 at 8.  Specifically, Plaintiff cites to statements from Dr. Laberge' and Dr. Teso.  *Id*.  On November 1, 2013, Dr. Laberge diagnosed Plaintiff with restless legs and stated that "I started gabapentin for restless legs vs. neuropathy in her feet.  It only bothers her at night."  Tr. 565.  On October 28, 2013, Dr. Teso stated that "I also discussed the fact that she does have intermittent rest pain, but given the symptoms it may be a compound effect of her neuropathy, and the bilaterality of the symptoms makes it less likely vascular due to her normal left ankle-brachial index."  Tr. 499.  While these examinations may not qualify as signs, symptoms, or laboratory findings as set forth in  20 C.F.R. § 404.1521, since the ALJ will be calling a medical expert to testify at the remand proceedings, the expert can further evaluate whether a finding of peripheral neuropathy as a medically determinable impairment prior to December 31, 2013, is supported in the record.

### 4.    Medical Opinions

Plaintiff challenges the ALJ's treatment of the opinions of David Krueger,

M.D. and R. Allen Laberge, M.D.  ECF No. 14 at 11-22.

For claims filed on or after March 27, 2017, new regulations apply that change the framework for how an ALJ must weigh medical opinion evidence. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844 (Jan. 18, 2017); 20 C.F.R. § 416.920c.  The new regulations provide that the ALJ will no longer give any specific evidentiary weight to medical opinions or prior administrative medical findings, including those from treating medical sources.  20 C.F.R. § 416.920c(a).  Instead, the ALJ will consider the persuasiveness of each medical opinion and prior administrative medical finding, regardless of whether the medical source is an Acceptable Medical Source.  20 C.F.R. § 416.920c(c).  The ALJ is required to consider multiple factors, including supportability, consistency, the source's relationship with the claimant, any specialization of the source, and other factors (such as the source's familiarity with other evidence in the file or an understanding of Social Security's disability program).  *Id.*  The regulations emphasize that the supportability and consistency of the opinion are the most important factors, and the ALJ must articulate how she considered those factors in determining the persuasiveness of each medical opinion or prior administrative medical finding.  20 C.F.R. § 416.920c(b).  The ALJ may explain how he considered the other factors, but is not required to do so, except in cases where two or more opinions are equally well-supported and consistent with the record.  *Id.*

Supportability and consistency are further explained in the regulations:

(1) *Supportability.* The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

(2) *Consistency.* The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 404.1520c(c).[3]

### A.    David Krueger, M.D.

On January 17, 2012, Dr. Krueger evaluated Plaintiff.  Tr. 347-49.  In the "History" section, Dr. Krueger stated that if Plaintiff's "blood pressure is not controlled she is disabled but hopefully with more medication and her restored heart by echocardiogram she can live a normal life and work."  Tr. 347.  Imaging had shown that her heart function had been restored from the year prior.  Tr. 348-

---

[3]The parties disagree over whether Ninth Circuit case law continues to be controlling in light of the amended regulations, specifically whether an ALJ is still required to provide specific and legitimate reasons for discounting a contradicted opinion from a treating or examining physician.  ECF Nos. 14 at 12-13, 20 at 12-16.  The Court finds resolution of this question unnecessary to the disposition of this case.

49.  He then stated that "[w]ith her malignant hypertension she is not able to work

a full day but hopefully within the next couple of weeks we can titrate her

medicines up despite her social stresses and her musculoskeletal pains."  Tr. 349.

The ALJ did not discuss Dr. Krueger's statements.  Plaintiff argues that this

failure to discuss the statements is an error.  ECF No. 14 at 14.  Under the new

regulations, the ALJ is not required to discuss opinions on issues reserved for the

Commissioner.  *See* 20 C.F.R. § 404.1520b(c)(3) (Since a statement that you are

"not disabled, blind, or able to work, or able to perform regular or continuing

work," "is inherently neither valuable nor persuasive to the issue of whether you

are disabled or blind under the Act, we will not provide any analysis about how we

considered such evidence in our determination or decision").  Therefore, the ALJ

did not err by failing to discuss this opinion.

**B.    R. Allen Laberge, M.D.**

On April 28, 2015, Dr. Laberge completed a disability evaluation for the

Department of Social and Health Services (DSHS).  Tr. 640.  However, there is no

functional opinion form from DSHS associated with the treatment record.  Instead,

the treatment record contains the statement that "[o]verall I do not feel she is

capable of even sedentary work . . . I feel it is unlikely she will be able to tolerate

even sedentary work for the next 12 months, probably never."  *Id*.  On April 12,

2017, Dr. Laberge was presented with another DSHS form.  Tr. 688.  Again, this

form is not in the record, but Dr. Laberge stated that Plaintiff "[c]ontinues to be

disabled.  Long term her most disabling problem is her neuropathy, this will not change to the point she will be employable.  It has worsened since her disability evaluation in April 2015." *Id.*  On June 22, 2018, Plaintiff again gave Dr. Laberge a disability evaluation form.  Tr. 725.  Again, this form is not in the record.  He listed her disabling conditions, Tr. 725-26, and completed a physical examination, Tr. 730-31.  He did not provide a functional evaluation.  Instead, he stated that "[i]t is not reasonable to believe she will ever improve to the point she will be able to re-enter the workforce even at a sedentary part-time level."  Tr. 725.

Under the new regulations, the ALJ is not required to provide any analysis about how he considered statements that a claimant is not disabled, blind, able to work, or able to perform regular or continuing work, statements about whether or not a claimant has a severe impairment, or statements about a claimant's RFC using programmatic terms about the functional exertional levels.  20 C.F.R. § 404.1520b(c).  Therefore, the ALJ was not required to address these statements.  However, on remand the ALJ will work with Plaintiff to gather the disability evaluation forms from DSHS, which likely contain opinions addressing her functional abilities.

On March 12, 2020, Dr. Laberge provided an opinion that since December 1, 2013, Plaintiff was limited to walking less than 2 blocks if on level ground, limited to 20 to 30 minutes sitting, unable to use her hands for prolonged  or repetitive activities.  Tr. 1209-10.  He also stated that Plaintiff's walking was

limited to four to five blocks. Tr. 1209. He stated that Plaintiff "would not be able to tolerate 40 hours a week. She would not likely tolerate one 8 hour day. If she tried to work 8 hours a day, 5 days a week, she would miss at least several days a week." Tr. 1210.

The ALJ found this opinion not persuasive for the period from September 1, 2013 through December 31, 2013. Tr. 29. Specifically, the ALJ found that the opinion was based on impairments that did not exist before December 31, 2013, and Dr. Laberge failed to address Plaintiff's improvement in the peripheral artery disease after the November 2013 stenting. *Id*. Since the ALJ is to readdress peripheral neuropathy at step two, the ALJ will readdress this opinion on remand.

**5.    Plaintiff's Symptom Statements**

Plaintiff argues that the ALJ erred in the treatment of her symptom statements. ECF No. 14 at 18-21.

An ALJ engages in a two-step analysis when evaluating a claimant's testimony regarding subjective pain or symptoms. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "The claimant is not required to show that his impairment could reasonably be expected to cause the severity of the symptom he has alleged; he need only show that it could reasonably have caused some degree of the symptom." *Id*.

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted).

The ALJ stated that Plaintiff's statements about intensity, persistence, and limiting effects of her symptoms "are inconsistent because they differ from the evidence of record," Tr. 28, and concluded that these statements were "not fully supported prior to October 11, 2018," Tr. 29. The evaluation of a claimant's symptom statements and their resulting limitations relies, in part, on the assessment of the medical evidence. *See* 20 C.F.R. § 404.1529(c); S.S.R. 16-3p. Therefore, in light of the case being remanded for the ALJ to readdress the medical source opinion in the file and supplement the record with missing DSHS forms, a new assessment of Plaintiff's subjective symptom statements will be necessary.

## CONCLUSION

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). The Court finds that further administrative proceedings are appropriate. On remand, the ALJ must call a medical expert to testify regarding whether Plaintiff met or equaled listings 4.04 or 4.12 as early as 2011 and whether Plaintiff's peripheral neuropathy was a medically determinable

severe impairment prior to December 31, 2013.  The ALJ will also readdress Dr.

Laberge's 2020 opinion, gather the missing forms from DSHS, and readdress

Plaintiff's symptom statements.  Furthermore, if it is determined that Plaintiff's

impairments met or equaled a listed impairment prior to August 1, 2013, the ALJ

must address whether or not Plaintiff's prior applications can be reopened.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1.  Plaintiff's Motion for Summary Judgment, ECF No. 14, is **GRANTED,** and the matter is **REMANDED** to the Commissioner for additional proceedings consistent with this Order.

2.  Defendant's Motion for Summary Judgment, ECF No. 20, is **DENIED**.

The District Court Executive is hereby directed to enter this Order and

provide copies to counsel, enter judgment in favor of the **Plaintiff**, and **CLOSE**

the file.

**DATED** January 10, 2022.

LONNY R. SUKO
Senior United States District Judge

ORDER ~ 22